UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ELLEN LENNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:06-CV-257 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| UNUMPROVIDENT CORPORATION, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM**

Before this Court is Defendant UnumProvident Corporation's ("Defendant") Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Court File No. 19). Defendant asserts plaintiff Ellen Lennon's ("Plaintiff") discrimination and retaliation claims are time-barred (*id.*). In ruling on this motion, the Court considers Plaintiff's response (Court File No. 21), and Defendant's reply (Court File No. 22). Due to the Court's consideration of matters outside the pleadings, the Court will treat Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), as a motion for summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

For the following reasons the Court with **GRANT** Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Court File No. 19).

## **I. Relevant Facts and Procedural History**

Plaintiff is a woman over forty years old, who worked for Defendant (Court File No. 1, ¶¶ 3, 24). On November 3, 2005, Defendant sent Plaintiff a memorandum at her office and a letter to her home, informing her her position with Defendant would be eliminated on December 30, 2005

(Court File No. 1, Exhibits A, B).

On November 4, 2005, Defendant held a "Benefits Center Open Hour," from 9 am to 10 am, where Joyce Lee ("Lee"), a representative of Defendant, discussed the outplacement process with employees whose positions were being eliminated (*see* Court File No. 1, Exhibit E). Plaintiff attended the meeting (Court File No. 1, ¶ 12). During the meeting, Lee threatened the employees in attendance by saying "[i]f you are thinking of suing, think again, UnumProvident is a large employer and employers talk" (Court File No. 1, ¶ 17). After the November 4, 2005 meeting, Plaintiff and other employees whose positions were being eliminated were permitted to retrieve their personal belonging from their work areas (Court File No. 1, ¶ 11; *id.*, Exhibit E).

On November 7, 2005, a memorandum was sent, reiterating to the displaced employees, including Plaintiff, they would not be required to be physically at work from the date when they were informed of their termination, November 3, 2005, to the date of their official termination, December 30, 2005 (Court File No. 1, Exhibit D). The displaced employees were informed they would need to be reachable by telephone during that period, however, so they could answer any questions which might arise concerning the claims on which they had been working (*id.*).

On December 18, 2005, Plaintiff sent a letter to Lee, detailing Plaintiff's displeasure with her termination (Court File No. 1, Exhibit F). Plaintiff asserted her termination was unjustified because she had been moved among departments, but did not receive appropriate training for her new tasks or a timely review of her work quality prior to her dismissal (*id.*). She also challenged the limitation of the severance package, because she was the only displaced employee who had sufficient years of service to be affected by the cap on the severance amount (*id.*). Plaintiff notes in the letter she had been in communication with legal counsel (*id.*).

On January 9, 2006, Lee responded to Plaintiff's letter, reiterating the terms of Plaintiff's dismissal (Court File No. 1, Exhibit G). Lee also informed Plaintiff, due to Plaintiff's failure to contact management at the time Plaintiff felt her training was inadequate or her work environment was hostile, Defendant was unable to investigate the claim and rectify any problems while they still existed (*id.*).

On or about February 10, 2006, Plaintiff's legal counsel, James P. Hartz ("Hartz"), telephoned Angela Ripper ("Ripper"), Defendant's counsel, and Hartz was informed Defendant had a policy preventing Ripper from discussing legal matters with attorneys not licensed in Tennessee (Court File No. 1, ¶ 20). On or about that same day, Plaintiff called Ripper due to Ripper's refusal to speak with Hartz (*id.*). Ripper informed Plaintiff, after investigation, she had determined Plaintiff was not subjected to any discriminatory conduct (*id.*).

On or about May 2, 2006, Plaintiff filed a grievance with the Tennessee Board of Professional Responsibility ("Board"), presumably due to Ripper's refusal to speak with Plaintiff's attorney (Court File No. 1, ¶ 21). The Board found Plaintiff's claims insufficient and they were dismissed (*id.*).

On September 6, 2006, Plaintiff filed an age and gender discrimination claim with the Equal Employment Opportunity Commission ("EEOC") (Opposition to Defendant's Motion to Dismiss, Court File No. 21, p. 2; Court File No. 19, Exhibit A). The EEOC dismissed the claim as untimely (Court File No. 19, Exhibit B).

On December 8, 2006, Plaintiff filed her action with this Court alleging discrimination[1] and

---

[1]Plaintiff's complaint does not raise issue with EEOC's rejection of her *gender* discrimination claim. To the extent Plaintiff inadvertently failed to do so, the Court's decision applies to Plaintiff's age and gender discrimination claims equally, because they share the same statute of

3

retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) and The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a) (Court File No. 1, ¶¶ 22, 28).

## II.     Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

---

limitations deficiencies.

4

**III.    Discussion**

Defendant has moved the Court to dismiss Plaintiff's claim due to her failure to file the claim with the EEOC within 300 days. *See* 29 U.S.C. § 626(d)(2)(requiring the claim to be filed "within 300 days after the alleged unlawful practice occurred"); 29 U.S.C. § 633(b). Although the importance of strict adherence to statutes of limitations is often not expressly recognized, statutes of limitations are a fundamental part of any action, as they "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (citing *RR Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 349 (1944)); *accord Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002).

Plaintiff filed her claim with the EEOC on September 6, 2006 (Court File No. 21, p. 2). Because Plaintiff had 300 days after the alleged unlawful practice occurred to file her claim, the discriminatory or retaliatory act must have occurred on or after November 10, 2005 to be timely. *See* 29 U.S.C. § 626(d)(2). Thus, a claim based solely upon Defendant's dismissal on November 3, 2005 is untimely (*see* Court File No. 1, Exhibit E). Furthermore, the alleged threat of retaliation from Lee on November 4, 2005, without more, is untimely (*see* Court File No. 1, ¶ 7).

To avoid this timeliness issue, Plaintiff has formulated three distinct arguments. First, Plaintiff argues additional conduct after receiving notice of her termination was discriminatory and/or retaliatory, and thus actionable in its own right (Court File No. 21, pp. 8-12). Second,

Plaintiff argues this post-termination-notice conduct was part of an on-going hostile work environment, and permits her to recover for all conduct, even that prior to November 10, 2005, which was part of the same on-going hostile work environment (Court File No. 21, pp. 9-11). Third, Plaintiff asks the Court to toll the statute of limitations on equitable grounds because Defendant's conduct unfairly delayed her filing her claim with the EEOC (Court File No. 21, pp. 3-8). The Court addresses each of these arguments in turn.

### A.  Discriminatory or Retaliatory Conduct after Notice of Termination

Plaintiff refers to several actions she alleges may have been discriminatory or retaliatory after November 10, 2005 (i.e. 300 days prior to her EEOC filing). They are as follows:

December 30, 2005 was Plaintiff's official termination day (Court File No. 1, Exhibit D). Plaintiff has not alleged Defendant committed any act of discrimination or retaliation on her last official day. The Court cannot consider her last official day of work as a separate act of discrimination when the alleged discriminatory act, i.e. the decision to terminate Plaintiff, occurred on November 3, 2005. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, -- U.S. ---, 127 S.Ct. 2162, 2168-69 (2007) ("A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." Conduct "giving present effect to discriminatory conduct outside of [the filing] period" does not renew the 300 day period.); *accord Walker v. Hoppe*, 239 Fed. App'x 998, 999 (6th Cir. 2007). Because Plaintiff cannot transfer the discriminatory or retaliatory intent for previous conduct and impute it onto later conduct, Plaintiff must prove subsequent actions were, in and of themselves, discriminatory or retaliatory, and has not done so here. *See Ledbetter*, 127 S. Ct. at 2170.

6

Similarly, the January 9, 2006 response letter from Lee, Defendant's representative, is conduct "giving present effect to discriminatory conduct outside of [the filing] period" (*see* Court File No. 1, Exhibit G). *See Ledbetter*, 127 S.Ct. at 2169; *Walker*, 239 Fed. App'x at 999. It is not a separately-actionable instance of discrimination. *Id.*

On February 10, 2006, Defendant's representative, Ripper, refused to speak to Plaintiff's attorney, citing Defendant's policy not to discuss legal matters with attorneys not licensed in Tennessee (Court File No. 1, ¶ 20). Later that same day, Plaintiff called Ripper, who proceeded to discuss Defendant's investigation of Plaintiff's claim directly with Plaintiff (*id.*). There is no evidence before the Court Defendant's refusal to speak with Plaintiff's attorney was due to discriminatory intent based upon Plaintiff's age or gender, and thus this event is insufficient to support a discrimination claim. *See Ledbetter*, 127 S.Ct. at 2168-69; *Walker*, 239 Fed. App'x at 999. Furthermore, Defendant's alleged policy to not speak with attorneys not licensed in Tennessee (*see* Court File No. 1, ¶ 30(b)) cannot qualify as retaliation. *See* 42 U.S.C. § 2000e-3(a). The policy may discriminate against non-Tennessee-licensed attorneys, but there is no evidence to support the assertion Defendant's policy was intended to discriminate by age or gender, or retaliate against anyone who opposed an unlawful employment practice. *See id.* Under the policy, Defendant would have spoken to a Tennessee-licensed attorney, regardless of the age or gender of the attorney's client or whether an unlawful employment practice was being opposed. In fact, Defendant spoke to Plaintiff directly, despite her opposition, age, and gender (Court File No. 1, ¶ 20).

Because Defendant's conduct after November 10, 2005 cannot support an independent claim of discrimination or retaliation, the Court will **GRANT** Defendant's motion for summary judgment.

7

B.     **Hostile Work Environment**

Plaintiff argues, although much of the discriminatory conduct occurred prior to November 10, 2005, it is still actionable as part of an on-going, hostile work environment (Court File No. 21, pp. 9-11 ). Construed in the strongest articulation possible, Plaintiff alleges her termination was merely an act of discrimination in an on-going scheme of transferring her among departments and different jobs, imposing upon her expectations Defendant knew she would be unable to fulfill due to its withholding proper training for her new duties. Assuming Plaintiff had produced sufficient factual evidence to support such a claim, Defendant was informed of her termination on November 3, 2005 (Court File No. 1, Exhibits A, B). She was not required to physically be present at work after that date (*see id.*, Exhibit D). Although Defendant required Plaintiff to be available via telephone to answer any questions involving her former employment duties (Court File No. 1, Exhibit D), there have been no allegations or supporting evidence to show Plaintiff was actually contacted concerning substantive-work issues, and treated in a hostile manner - thereby continuing the hostile work environment beyond November 10, 2005.

To determine whether an actionable hostile work environment claim exists, the Court must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and *whether it unreasonably interferes with an employee's work performance*." *Nat. RR Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)(emphasis added)(citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Thus, to make her claim timely by arguing a hostile work environment, Plaintiff argues her hostile work environment continued to at least November 10, 2007, even though she was no longer physically at work at that time (*see* Court File No. 21, pp. 9-11 ). Plaintiff offers no legal

authority or factual explanation as to how her work performance was unreasonably interfered with when she was no longer at work or working, and the Court has found none. *See Morgan*, 536 U.S. at 116.

Because any hostile work environment claim became actionable before November 10, 2005, the Court will **GRANT** Defendant's motion for summary judgment.

### C. Equitable Estoppel

Plaintiff asserts two grounds upon which she seeks equitable estoppel, neither of which are supported by fact or law. As recognized in *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir. 1987), "the tolling of the statutory periods on equitable grounds is usually very much restricted." To toll the statute of limitations, a defendant must directly and expressly delay the plaintiff from filing his claim before the deadline. *See Leake v. Univ. of Cincinnati*, 605 F.2d 255, 259 (6th Cir. 1979) (during voluntary negotiations, employer assured employee it was investigating her claim and the delay would not prejudice her claim); *cf. Steiner v. Henderson*, 354 F.3d 432, 436-37 (6th Cir. 2003) (where Defendant did not mention the filing deadline or specifically encourage Plaintiff not to file an EEOC claim, no tolling was appropriate).

Plaintiff claims the multiple employment termination notices misled Plaintiff concerning when the 300 day statute of limitations began running (Court File No. 21, pp. 4-7). However, the content of the notices and surrounding circumstances cannot support such confusion. The first notice, on November 3, 2005, clearly informed Plaintiff her position would be terminated on December 30, 2005 (Court File No. 1, Exhibits A, B). The Benefits Center Open Hour and subsequent memorandum dealt with the practical details of termination, and in no way confused or called into question the relevant issue here - Plaintiff's position would be terminated on December

9

30, 2005 (*see* Court File No. 1, Exhibits D, E). Even Defendant's response letter to Plaintiff on December 18, 2005 reiterated the finality of the termination decision (*see* Court File No. 1, Exhibit G). This Court cannot agree with Plaintiff's factually-unsupported assertions the language of the termination notices and subsequent circumstances unfairly delayed her from filing a timely EEOC claim. Defendant's termination of Plaintiff was clear and did not express any willingness to reconsider the decision. These facts show no similarities to *Leake*, where the employer expressly directed the employee not to file her claim, and thus estoppel was warranted. *See* 605 F.2d at 259. The facts here better resemble *Steiner*, where the employer did not discourage or even mention an EEOC claim or the relevant deadlines, and thus estoppel was inappropriate. *See* 354 F.3d at 436-37.

Additionally, Plaintiff claims Defendant's threat of speaking negatively to other employers about any terminated employee who took legal action unfairly delayed her from filing a timely claim (Court File No. 1, ¶ 17; Court File No. 21, p. 7). As stated in her letter to Defendant dated December 18, 2005, Plaintiff had already discussed her concerns with legal counsel (Court File No. 1, Exhibit F). Despite Plaintiff's claim the threat was intended to intimidate her from obtaining legal counsel (*see* Court File No. 1, ¶17), she did so regardless of the threat of retaliation, and before the expiration of her discrimination claim. Only forty-four days had passed between the threat and the letter stating she had already spoken with counsel, leaving her 256 days to discuss her claim with counsel and file suit (*see* Court File No. 1, Exhibit F). Furthermore, Plaintiff, through her attorney, filed a grievance against Defendant's attorneys with the Tennessee Board of Professional Responsibility on or about May 2, 2006 (Court File No. 1, ¶ 21). This behavior is not consistent with someone who was too intimidated by Defendant's November 4, 2005 threat to file a timely claim by August 30, 2006 (300 days after November 3, 2005, the day Plaintiff was first notified of

10

her discriminatory termination - *see* Court File No. 1, Exhibit A).

This Court has no factual basis upon which to grant Plaintiff equitable estoppel. As such, the Court will **GRANT** Defendant's motion for summary judgment.

**IV.     Conclusion**

Having filed her discrimination claim more than 300 days after any potentially-actionable behavior, Plaintiff is barred from maintaining her claims due to the applicable statute of limitations. Since Plaintiff has not provided factual or valid legal grounds which permit this time-bar to be avoided or satisfied, this Court will **GRANT** Defendant's motion for summary judgment (Court File No. 19), and will **DISMISS** Plaintiff's claim (Court File No. 1).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**